# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| BRANDOLYN HENDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CDR MAGUIRE, INC. and CDR HEALTH CARE, INC.,<br><br>Defendants. | **Case No.** 1:2022cv23163<br><br>FLSA Collective Action<br><br><br><br>Jury Trial Demanded |

## FLSA COLLECTIVE ACTION SETTLEMENT AGREEMENT

This FLSA Collective Action Settlement Agreement ("Settlement Agreement," "Settlement," or "Agreement") is entered into between Plaintiff BRANDOLYN HENDERSON ("Plaintiff"), individually and on behalf of the Settlement Collective defined below, and Defendants CDR MAGUIRE, INC. and CDR HEALTH CARE, INC. (collectively "Defendants") (Plaintiff and Defendants together, the "Parties"), subject to the approval of the Court.

## RECITALS

1. Plaintiff BRANDOLYN HENDERSON, who worked as an hourly-paid nurse in Florida, filed a lawsuit in the United States District Court for the Southern District of Florida on September 29, 2022, alleging Defendants violated the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") by not paying her overtime for all work performed over forty hours in a workweek (ECF No. 1).

2. Defendants filed their Answer and Affirmative Defenses on December 8, 2022, and denied Plaintiff's claims in their entirety (ECF No. 19).

3. The Parties engaged in substantial informal discovery and exchange of information in connection with the litigation of the case and settlement efforts.

Defendants provided Plaintiff's Counsel with payroll data and timekeeping data, which Plaintiff's Counsel reviewed and analyzed extensively.

4.      Thereafter, based on the time and pay information exchanged by Defendants, Plaintiff created a damages model which took into account the time and pay for all similarly situated hourly-paid nurses employed by Defendants at the same facilities at which Plaintiff worked in the last three (3) years.

5.      Following Plaintiff's creation of his damages model, the Parties engaged in efforts to resolve the case through extensive settlement negotiations.

6.      As a result of these continued arm's length negotiations, the Parties agreed to settle Plaintiff's and the putative collective's claims according to the terms of this Settlement Agreement. The Parties separately negotiated the wage damages and attorneys' fees and costs.

7.      Plaintiff's Counsel has made a thorough and independent investigation of the facts and law relating to the allegations in this lawsuit. In agreeing to this Settlement Agreement, Plaintiff has considered: (i) the facts developed during the mediation process and the law applicable thereto; (ii) the risks of continued litigation; and (iii) the desirability of consummating this Settlement according to the terms of this Settlement Agreement. Plaintiff has concluded the terms of this Settlement Agreement are fair and reasonable, and that it is in the best interests of Plaintiff and the Settlement Collective Members to settle their claims against Defendants as set forth herein.

8.      Defendants deny the allegations in this lawsuit, and further deny any liability for any wage and hour violations or failure to pay overtime compensation. Defendants are entering this Agreement to eliminate the burden, risk, and expense of further litigation. This Settlement Agreement and all related documents are not and shall not be construed as an admission by Defendants or any of the Released Parties (as defined below) of any fault, liability, or wrongdoing, which Defendants expressly deny.

9.      The Parties recognize that Court approval of this Settlement is required to effectuate the Settlement, and the Settlement will not become operative until the Court enters its Approval Order.

10.     The Parties stipulate and agree that, for settlement purposes only, the requirements for establishing collective action certification under the FLSA pursuant to 29 U.S.C. § 216(b) are met with respect to the Settlement Collective Members as defined below. Should this Settlement not be approved, such stipulation to

conditional certification shall become null and void and shall have no bearing on (or be admissible in connection with) the issue of whether conditional certification would be appropriate in a non-settlement context.

11. In consideration of the foregoing, the receipt and sufficiency of which is hereby acknowledged, it is hereby agreed as follows.

## **DEFINITIONS**

12. The following terms used in this Agreement have the following meanings:

    a. "Action" means the above-captioned lawsuit.

    b. "Approval Order" means the Order finally approving the terms and conditions of this Agreement, as may be modified by the Court.

    c. "Check Cashing Period" means the period of 180 days after settlement checks are initially issued by Defendants to Settlement Collective Members.

    d. "Court" means the United States District Court for the Southern District of Florida.

    e. "Defendants" means CDR MAGUIRE, INC. and CDR HEALTH CARE, INC.

    f. "Defendants' Counsel" means FordHarrison, LLP.

    g. "Fees and Costs Settlement Amount" means, subject to Court approval, Plaintiffs' Counsel's attorneys' fees and costs in the total amount of FIFTY THOUSAND ($50,000.00), an amount which was negotiated independently of the amount payable to the collective for their alleged unpaid wages and liquidated damages.

    h. "Named Plaintiff" or "Plaintiff" means BRANDOLYN HENDERSON.

    i. "Parties" means Plaintiff and Defendants.

    j. "Plaintiff's Counsel" means Morgan & Morgan P.A. and Parmet Law.

k.      "Released Claims" means any and all Fair Labor Standards Act claims (and related Florida state law wage claims) that accrued to the Settlement Collective Members while working for Defendants at any time between September 22, 2019, and July 18, 2023, including, without limitations, all FLSA and Florida state law claims for unpaid wages, and related claims for penalties, interest, liquidated damages, attorneys' fees, costs, and expenses. The Released Claims shall become released upon the signing, cashing, or depositing of a Settlement Award check.

l.      "Released Parties" means CDR MAGUIRE, INC. and CDR HEALTH CARE, INC., and each of their respective present and former affiliates, divisions, members, joint venture partners, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, employees, agents, attorneys, shareholders and/or successors, insurers or reinsurers, employee benefit plans (and the trustees, administrators, fiduciaries, agents, representatives, insurers and reinsurers of such plans), subcontractors, third-party vendors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof, and all persons or entities acting by, through, under, or in concert with any of them, and any individual or entity that could be jointly liable with any of them.

m.      "Relevant Time Period" means September 22, 2019 to July 18, 2023.

n.      "Settlement Award" means the payment that each Settlement Collective Member shall be entitled to receive pursuant to the terms of this Agreement.

o.      "Settlement Collective Members" means Plaintiff and all current and former similarly-situated hourly-paid nurses who were employed by Defendants in Florida between September 22, 2019 and July 18, 2023.

p.      "Wage Settlement Amount" means the sum of SIXTY-FIVE THOUSAND NINE HUNDRED TWENTY-FIVE ($65,925) DOLLARS. Defendants shall separately pay (in addition to the Gross Settlement Amount) or have paid on their behalf the employer's share of payroll taxes associated with the Wage Settlement Amount.

q.      "Gross Settlement Amount" means the sum of One Hundred FIFTEEN THOUSAND NINE HUNDRED TWENTY-FIVE ($115,925)

DOLLARS, which is the sum of the Wage Settlement Amount and the Fees and Costs Settlement Amount, collectively. Except as otherwise provided in this Agreement, the Gross Settlement Amount is the maximum amount to be paid by Defendants to resolve the Action.

## RELEASES

13. **Settlement Collective Members' Released Claims.** In exchange for the consideration set forth in this Settlement Agreement, upon signing, cashing, or depositing a Settlement Award check, the Settlement Collective Members agree to release the Released Claims.

Settlement Collective Members, to the fullest extent allowed by law, are prohibited from asserting any claims released by them in this Settlement, and from commencing, joining in, prosecuting, or voluntarily assisting in a lawsuit or adversarial proceeding against the Released Parties, based on claims released by them in this Settlement. The Notice of Settlement substantially in the form attached at Exhibit A will advise that, by signing, cashing, or depositing a Settlement Award Check, the Settlement Collective Members further agree they will not opt-in, will withdraw any opt-in, and will dismiss this action or themselves from the action in actions where they are a claimant, plaintiff, or appellant, and will opt-out of those actions if they become aware of such actions. Excluded from this prohibition are any instances where any individual is legally compelled to testify through service of a subpoena or other process.

## FINAL CERTIFICATION, NOTICE AND SETTLEMENT IMPLEMENTATION

14. The Parties agree to the following procedures for obtaining approval of the Settlement, finally certifying the Settlement Collective, and notifying the Settlement Collective Members of this Settlement:

    a. Plaintiff shall prepare and, subject to Defendants' approval which shall not be unreasonably withheld, file an Unopposed Motion to Approve the FLSA Settlement with the Court, and request that the Court certify the Settlement Collective pursuant to 29 U.S.C. § 216(b) for the purposes of: (i) notifying the Settlement Collective Members of the Settlement and their rights to participate; (ii) approving the FLSA Settlement Agreement and its terms as a fair and reasonable resolution of a *bona fide* dispute; and (iii) approving the proposed form of Settlement Notice and Settlement Award checks, and their means of dissemination.

  b. **Notice and Distribution of Settlement Awards.**  Plaintiff's Counsel shall be responsible for preparing, printing and mailing the Notice of Settlement substantially in the form attached as Exhibit A together with the Settlement Award check with the Check Opt-In Form language on the back to Plaintiff and all Settlement Collective Members by U.S. Mail within 10 business days after Plaintiff's counsel receives the Settlement Checks from Defendants.  The Parties will expressly request, as part of the settlement approval papers, that the Court deem executed checks with the Check Opt-In Form language to constitute a valid consent to joint form under 29 U.S.C. § 216(b) and a release of the Released Claims.

  c. The Settlement Awards shall be checks that contain a limited endorsement placed on the front of the check stating that by signing, depositing, and/or cashing the settlement check, the Settlement Collective Member agrees to opt in to this collective action, defined by its caption as follows ("Check Opt-In Form"):

> By depositing or cashing this check, I am opting into and affirm my release of CDR MAGUIRE, INC. and CDR HEALTH CARE, INC., and all other Released Parties of my Released Claims as defined in the Settlement Agreement approved by the Court in *Henderson v. CDR Maguire, Inc., et al.,* 1:2022cv23163.  I affirm that I will not sue or assert any of the Released Claims, including FLSA claims, against any of the Released Parties.

  d. **Settlement Collective List.**  Within fourteen (14) days after the Court's Approval of the Settlement, Defendants' counsel shall provide to Plaintiff's counsel an electronic list, in Microsoft Excel format, containing the names, and last known addresses of each Settlement Collective Member ("Collective List"), which will be used to prepare the issuance of the Notice Packet, and locating individuals if a Settlement Check is returned as undeliverable, and for tax purposes.

  e. Any Notice and Settlement Award returned to the Plaintiff's Counsel with a forwarding address shall be re-mailed within three (3) business days following receipt of the returned mail.  If any Settlement Notice and Settlement Award is returned to Plaintiff's Counsel without a forwarding address, Plaintiff's Counsel shall undertake reasonable efforts to search for the correct address and shall promptly re-mail the Settlement Notice and Settlement Award to any newly found addresses.

   f. Settlement Collective Members will not be required to submit a claim form to receive a Settlement Award.  All Settlement Award checks to Settlement Collective Members shall remain negotiable for 180 days from the date they are issued ("Claim Period").  Settlement Collective Members become Claimants by signing and negotiating their Settlement Award checks without any alteration to the Check Opt-In Form during the Claim Period.  If any mailed notice and Settlement Award is returned as undeliverable more than thirty (30) days after the initial mailing, a new Settlement Award check with the Check Opt-In Form language shall be issued to the intended recipient and included in the re-mailing so that the intended recipient shall be permitted the longer of sixty (60) days from any re-mailing of the Notice and Settlement Award check and the remainder of the Claim Period to become a Claimant ("Re-mailing Claim Period").

   g. Any amounts from uncashed settlement checks after the 180-day period will revert back to Defendants.

   h. Individuals who do not cash their settlement checks do not release any claims against the Defendants.

## SETTLEMENT FUNDS AND AWARD CALCULATION

  15. Within thirty (30) calendar days after the Court's Order on Plaintiff's Unopposed Motion to Approve the FLSA Settlement, Defendants shall mail Plaintiff's Counsel, two checks for each member of the Settlement Collective's settlement amounts, and a separate check to Plaintiff's Counsel in the amount of $50,000.

  16. Prior to mailing the Settlement Collective List to Plaintiff's Counsel, Defendants shall use any and all methods available to update any addresses on the Settlement Collective List.

  17. Plaintiff's Counsel shall be responsible for disbursing all Settlement Awards and preparing, printing, and mailing the Settlement Notice to the Collective Members.

  18. Subject to the Court's Approval Order, Plaintiffs' Counsel shall receive the Fees and Costs Settlement Amount, in compensation for all work performed to date as well as all work remaining to be performed in the Action.

   a. The payment of the Court-approved Fees and Costs Settlement Amount shall be made on the date Defendants mail Plaintiff's Counsel the Wage Settlement Amount.

   b. The Fees and Costs Settlement Amount shall constitute full satisfaction of Defendants' obligations to pay amounts to any person, attorney, or law firm for attorneys' fees or costs in this Action on behalf of any Settlement Collective Member, and shall relieve Defendants from any other claims or liability to any other attorney or law firm for any attorneys' fees or costs to which any of them may claim to be entitled on behalf of any Settlement Collective Member, except as expressly provided herein.

   c. A Form 1099 shall be issued to Plaintiffs' Counsel for Plaintiff's Counsel's fees and costs, and Plaintiffs' Counsel shall be solely and legally responsible for paying any and all applicable taxes on the payment made to them

  19. Fifty percent (50%) of the Settlement Awards to Settlement Collective Members shall be considered wages subject to the withholding of all applicable local, state, and federal taxes.  Defendants shall make the required withholdings and shall issue an IRS Form W-2 to each Settlement Collective Member for these payments.  Defendants shall pay or have paid on their behalf the employers' side of taxes separate from the Gross Settlement Amount.  The remaining fifty percent (50%) of the Settlement Awards to Settlement Collective Members shall be considered liquidated damages.  Defendants shall issue an IRS Form 1099-MISC to each Settlement Collective Member for these payments.

  20. Within thirty (30) days after the Check Cashing Period ends, Defendants' Counsel shall notify Plaintiff's Counsel of the final list of Settlement Collective Members who have signed, deposited, or cashed their checks and, therefore, released the Released Parties of the Released Claims.

  21. No person shall have any claim against Defendants, Plaintiffs' Counsel, or Defendants' Counsel based on distribution or payments made in accordance with this Settlement Agreement.

## MISCELLANEOUS

  22. **No Retaliation.**  Defendants will not take any adverse action against any Settlement Collective Member on the grounds that they are eligible to participate or does participate in the Settlement.  If requested, Defendants shall state Defendants

and Plaintiff's Counsel encourage Settlement Collective Members to participate in the Settlement.

23. **No Admission of Liability**.  This Settlement Agreement and all related documents are a compromise and are not and shall not be construed as an admission by Defendants of any fault, liability, or wrongdoing.  Defendants enter into this Agreement to avoid further expense and risk and delay of litigation, and the Parties acknowledge and agree that liability is disputed by Defendants.  This Settlement Agreement and all related documents shall not be used to suggest an admission of liability in any dispute the Parties may have now, or in the future, with respect to any person or entity.  Neither this Settlement Agreement, nor anything herein, nor any part of the negotiations had in connection herewith, shall constitute evidence with respect to any issue or dispute other than for purposes of enforcing this Settlement Agreement.

24. **Defendants' Legal Fees.**  Defendants' legal fees and expenses in this Action shall be borne by Defendants.

25. **Prevailing Party Fees in the Event of Breach.**  To the extent any party successfully asserts a claim for breach of this settlement agreement in a court of adequate jurisdiction, the prevailing party in such a case shall be entitled to an award of their reasonable attorneys' fees and costs.

26. **Effect of Non-Approval.**  If the Court does not approve the Settlement as provided herein, the Parties agree to engage in follow-up negotiations with the intent of resolving the Court's concerns that precluded approval, and, if feasible, to resubmit the settlement for approval within thirty (30) days.  If the Settlement is not approved as resubmitted, or if the Parties are not able to reach another agreement, then any Party may void this Agreement; at that point, the Parties agree each shall return to their respective positions as existed on the day before this Agreement was executed and this Agreement shall not be used in evidence or argument in any other aspect in the Action.

27. **Interim Stay of Proceedings.**  The Parties agree to hold in abeyance all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement.

28. **Amendment or Modification.**  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors in interest, which will be submitted to the Court for further approval if

necessary. This Agreement may not be discharged except by performance in accordance with its terms or by a writing signed by the Parties hereto.

29. **Entire Settlement Agreement.** This Agreement and the exhibits hereto constitute the entire Agreement among the Parties with respect to the subject matter included herein, and no oral or written representations, warranties, or inducements have been made to any Party concerning this Agreement with respect to the subject matter included herein other than the representations, warranties, and covenants contained and memorialized in such documents. All prior or contemporaneous negotiations, memoranda, agreements, understandings, and representations with respect to the subject matter included herein, whether written or oral are expressly superseded hereby and are of no further force and effect. No rights hereunder may be waived except in writing.

30. **Authorization to Enter Into Settlement Agreement.** The Parties warrant and represent that they are authorized to enter into this Agreement and to take all appropriate action required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement. The Parties and their counsel shall cooperate with each other and use their best efforts to effect the implementation of the Agreement. In the event that the Parties are unable to reach resolution on the form or content of any document needed to implement this Agreement, or on any supplemental provisions or actions that may become necessary to effectuate the terms of this Agreement, the Parties shall seek the assistance of a Court-approved mediator, to resolve such disagreement.

31. **Binding on Successors and Assigns.** This Agreement shall be binding upon, and inure to the benefit of Plaintiff, Defendants, and the Settlement Collective Members and their heirs, beneficiaries, executors, administrators, successors, transferees, successors, assigns, or any corporation or any entity with which any party may merge, consolidate or reorganize. The Parties hereto represent, covenant and warrant they have not directly or indirectly assigned, transferred, encumbered or purported to assign, transfer, or encumber to any person or entity any portion of any liability, claim, demand, action, cause of action, or rights herein released and discharged except as set forth herein.

32. **Counterparts.** This Agreement may be executed in one or more counterparts, including by facsimile, email, and electronic signature. All executed counterparts and each of them shall be deemed to be one and the same instrument. All executed copies of this Agreement, and photocopies thereof (including facsimile

and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

33. **No Signature Required by Collective Members.**  Only the Named Plaintiff, and Defendants will be required to execute this Settlement Agreement.  The Settlement Notice will advise all Settlement Collective Members of the binding nature of the release and such shall have the same force and effect as if this Settlement Agreement were executed by each Settlement Collective Member.

34. **Cooperation and Drafting.**  The Parties have cooperated in the drafting and preparation of this Agreement; hence the drafting of this Agreement shall not be construed against any of the Parties.  The Parties agree the terms and conditions of this Agreement were negotiated at arm's length and in good faith by the Parties and reflect a settlement reached voluntarily, based upon adequate information and sufficient discovery and after consultation with experienced legal counsel.

35. **Governing Law**.  This Settlement Agreement shall be governed by and interpreted according to Florida law.

36. **Venue and Consent to Jurisdiction.**  The Parties agree that all disputes, legal actions, suits, and proceedings arising from or relating to this Agreement, including any dispute, legal action, suit, or proceeding seeking interpretation, implementation, and/or enforcement of this Agreement and all orders and judgments entered in connection therewith must be brought exclusively in the United States District Court for the Southern District of Florida.  Each party hereby consents and submits to the exclusive jurisdiction of the United States District Court for the Southern District of Florida for disputes, legal actions, suits, and proceedings arising from or relating to this Agreement, including any dispute, legal action, suit, or proceeding seeking interpretation, implementation, and/or enforcement of this Agreement and all orders and judgments entered in connection therewith.

IN WITNESS WHEREOF, the Parties and their Counsel have executed this Settlement Agreement as follows:

**PLAINTIFF:**

_____          Date:_____, 2023
BRANDOLYN HENDERSON                    07 / 19 / 2023

Doc ID: 3864f540a8cfbb11c19379bd454eb6b3e663cd7b

**DEFENDANTS:**

_____  Date:_____July 19_____, 2023
CDR MAGUIRE, INC.

By: TINA VIDAL, Executive Vice President

_____  Date:_____July 19_____, 2023
CDR HEALTH CARE, INC.

By: TINA VIDAL, Chief Executive Officer

WSACTIVELLP:112565472.1

# EXHIBIT A

## NOTICE OF SETTLEMENT OF WAGE CLAIMS FOR EMPLOYEES OF CDR

**TIME-SENSITIVE, COURT-AUTHORIZED NOTICE**
**\* \* \* This is not an advertisement from a lawyer. \* \* \***

### 1.    What is this about?

A lawsuit was filed against CDR Maguire, Inc. and CDR Health Care, Inc. ("CDR") for unpaid overtime under a federal law, the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. The lawsuit was filed by a former employee of CDR who claims CDR violated the FLSA by paying her and other hourly workers the same rate for all hours worked, without any overtime premium when they worked over 40 hours in a workweek.

The case is *Henderson v. CDR Maguire, Inc. et al.*, Case No. 1:22-cv-23163-DPG, in the Miami Division of the United States District Court for the Southern District of Florida. The Court has not determined that CDR is liable or did anything wrong. Instead, the employees and CDR reached a settlement to resolve the case. The Court overseeing the lawsuit has approved that settlement, which pays money to the employees.

### 2.    Why am I getting this notice?

You have been identified from CDR's records as an employee who worked for CDR as an hourly nurse in Florida since September 22, 2019, and who is eligible to recover money from the settlement. In order to recover money, you must join the settlement. If you do not join the settlement, you will not receive any money.

### 3.    What is my share of the settlement?

Your settlement payment is indicated on the enclosed check. It was based on your hours worked and pay during the relevant period.

### 4.    How do I get the money offered?

| To join the settlement:<br><br>**CASH THE CHECK** | If you choose to be included in the settlement, all you need to do is deposit or cash the enclosed checks. |
|---|---|
| To stay out of the settlement:<br><br>**DO NOTHING** | If you do not want a payment or other benefits from this settlement and you want to retain your legal rights with respect to any of the wage claims that were settled in this lawsuit, then **do not** deposit or cash the enclosed check(s). By doing nothing, you give up the possibility of getting money from this settlement. |

### 5.    What happens if I cash or deposit the check?

If you deposit or cash the enclosed check(s), you agree to the following:

You will be acknowledging that you are represented by PARMET PC and MORGAN & MORGAN, P.A. (together, the "Collective Attorneys") and that you will be bound by the terms of the attorney-client agreement signed by Brandolyn Henderson. You will **not** have to pay the Collective Attorneys any money directly. Attorneys' fees and costs will be paid separately by CDR.

You will be waiving and releasing all claims against CDR for unpaid wages, including overtime and penalties, between September 22, 2019, and «DATE», under the FLSA and applicable Florida law.

| 6. | **What does the Court think?** |

While the Court approved this settlement, the Court did not determine that CDR (or any other party) did anything wrong. The Court did not decide that you are owed any money. Instead, this is a settlement payment.

**Do not contact the Court regarding this settlement. The Court must remain neutral in this matter and cannot give you advice.**

| 7. | **What does CDR think?** |

CDR does not agree with the allegation that it did anything wrong and believes you were paid correctly and fairly for your work. CDR believes this settlement is a reasonable business solution to this lawsuit. No adverse employment action will be taken against you if you join this settlement and cash or deposit your settlement check.

| 8. | **How long do I have to make a decision?** |

**You can deposit or cash the enclosed check within 90 days of the date it was issued. If you lose or damage the check during that 90-day period, you can contact the Collective Attorneys to request that a replacement check be issued. Any reissued replacement check will be valid for 90 days after it is issued and a stop payment will placed on the original check. Attempting to cash the original check after a new check has been issued may result in liability.**

| 9. | **I still have questions. Where can I get more information?** |

This Notice is only a summary. If you would like, you can obtain certain documents related to the case. However, the deadline for cashing your check will not be extended.

If you have any questions about the collective action or your legal rights, you should contact the Collective Attorneys:

| | |
|---|---|
| Matthew S. Parmet | Andrew R. Frisch |
| PARMET PC | MORGAN & MORGAN |
| 2 Greenway Plaza, Ste. 250 | 8151 Peters Road, Suite 4000 |
| Houston, TX 77046 | Plantation, Florida 33324 |
| phone 713 999 5228 | Telephone: (954) WORKERS |
| team@parmet.law | Facsimile: (954) 327-3013 |
| | AFrisch@forthepeople.com |